**In the Matter of ESTABLISHMENT INSPECTION PORTEX, INC., Food and Drug Administration, Appellant.**

**No. 78–1431.**

United States Court of Appeals, First Circuit.

Argued March 6, 1979.
Decided April 13, 1979.

---

Andrea Limmer, Atty., Dept. of Justice, Washington, D. C., with whom John H. Shenefield, Asst. Atty. Gen., Richard M. Cooper, Chief Counsel, Washington, D. C., Kenneth C. Baumgartner, Associate Chief Counsel for Enforcement, Food and Drug Administration, Rockville, Md., and Robert B. Nicholson, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellant.

Douglas F. Seaver, Boston, Mass., with whom Daniel B. Bickford, Stuart T. Rossman, and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for appellee.

Before ALDRICH and CAMPBELL, Circuit Judges, and CAFFREY, District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

On August 3, 1978 a warrant to inspect "all pertinent equipment, finished and unfinished materials, containers, labeling, manufacturing, packaging and control records, records of interstate shipment of device components, complaint files and other records as authorized by 21 U.S.C. § 374 bearing on whether Portex, Inc., Cuffed Endotracheal tube devices [catalogue series beginning with the three digits 164, 171, 182, 186, 187] are being produced in compliance with the Act, packed, transported or held, or whether conditions exist which otherwise bear upon violation of the Act" was issued by a magistrate to an inspector of the Food and Drug Administration (FDA). The district court granted Portex's motion to quash the warrant, and the FDA brought this appeal.

Portex argues (1) the FDA does not have authority to inspect the records governed by the warrant; (2) the warrant was not supported by probable cause; (3) an adversary hearing was required before the administrative search warrant could issue. As we agree with Portex that the FDA does not have authority to inspect the records covered by the warrant, we do not reach issues (2) and (3).

The FDA's statutory authority to inspect is set forth in § 704(a) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 374(a). This section authorizes the FDA to inspect, *inter alia*, "[the] records, files, papers, processes, controls and facilities" of establishments in which "prescription drugs or restricted devices" are manufactured. Prior to the 1976 Medical Device Amendment, Pub.L. No. 94–295, 90 Stat. 539 (1976), the FDA could inspect "the records, files, papers, processes, controls, and facilities" only of establishments in which prescription drugs were manufactured, processed, packed or held. Federal Food, Drug, and Cosmetic Act, Pub.L. No. 87–781, § 201(a), 76 Stat. 792 (1962) (prior to the 1976 amendment). The 1976 amendment added the words "or restricted devices" after "prescription drugs." Pub.L. No. 94–295, § 6(a), 90 Stat. 581. The FDA, claiming that Portex's endotracheal tubes are restricted devices, bases its authority with respect to the records portion of the warrant on the 1976 amendment. The question, therefore, is whether the endotracheal tubes are restricted devices.

Restricted devices are described in § 520(e) of the Act, 21 U.S.C. § 360j(e) as follows:

"(e)(1) The Secretary may by regulation require that a device be restricted to sale, distribution, or use—

(A) only upon the written or oral authorization of a practitioner licensed by law to administer or use such device, or

(B) upon such other conditions as the Secretary may prescribe in such regulation,

---

* Sitting by designation.

if, because of its potentiality for harmful effect or the collateral measures necessary to its use, the Secretary determines that there cannot otherwise be reasonable assurance of its safety and effectiveness. . . . *A device subject to a regulation under this subsection is a restricted device.*" [Emphasis supplied.]

Thus, a restricted device is one which, "subject to a regulation under this subsection," may be sold, distributed or used (1) "only upon the written or oral authorization of a practitioner licensed by law to administer or use such device," or (2) upon such other conditions as the Secretary prescribes.

When § 520(e), 21 U.S.C. § 360j(e) was enacted, many devices including Portex's endotracheal tubes[1] were already subject to the FDA's prescription device regulation, 21 C.F.R. § 801.109.[2] It is the FDA's position that devices already subject to 21 C.F.R. § 801.109 which is designed to achieve the same basic objectives as would regulations passed pursuant to 21 U.S.C. § 360j(e) need not be reregulated under the agency's rulemaking authority before obtaining the status of restricted device. Accordingly, the FDA on June 4, 1976, about one week after the Medical Device Amendment became law, published a notice in the Federal Register stating in part:

"Restricted devices include all prescription devices as now defined in 21 C.F.R. 801.109 . . . ."

41 Fed.Reg. 22,620, 22,621 (1976). Thus, the FDA argues, Portex's endotracheal tubes are now restricted devices and the FDA may now exercise its extended inspection authority conferred by the 1976 amendment.

This is not the first time this question of the FDA's inspection authority has been decided at the circuit level. In December of last year, the Second Circuit rejected the FDA's position. *Becton, Dickinson and Company v. FDA*, 589 F.2d 1175 (2d Cir. 1978) (Friendly, J.). While agreeing the prescription device regulation was worded so as to encompass items similar to those within § 360j(e), *id.* at 1180, the court held that the pre-amendment regulation and the FDA's notice in the Federal Register did not satisfy the procedure contemplated by §§ 520(d) and (e), 21 U.S.C. §§ 360j(d)[3] and (e). The court stated,

"A reading of subsections 520(d) and (e) makes two points clear: One is that Congress was careful to provide a rulemaking procedure in which all participants would have a full opportunity to present their views and analyses of the data underlying the proposed regulation. The other is that Congress intended that the Secretary—in fact, his delegate, the Commissioner, 21 CFR § 5.1—determine that the particular restriction on sale, distribution or use is justified by the risks presented by the device."

589 F.2d at 1181. Only after these two functions were accomplished were the provisions of the amendments pertaining to restricted devices to take effect. The rulemaking proceeding which resulted in the prescription device regulation did not satisfy either requirement. Comment on the prescription device regulation obviously would not have been addressed to the additional strictures imposed upon the industry by the 1976 amendment. Further, the prescription device regulation leaves the determination whether the device's potential for harm warrants sale by prescription to the

---

**1.** The FDA has stated that Portex's endotracheal tubes were classified as prescription devices and Portex has not disputed this.

**2.** The text of 21 C.F.R. § 801.109 is set forth in *Becton, Dickinson and Company v. FDA*, 589 F.2d 1175, 1179 n.3 (2d Cir. 1978).

**3.** 21 U.S.C. § 360j(d) provides:
"(d) Each notice of proposed rulemaking under . . . this section . . . shall set forth—

(1) the manner in which interested persons may examine data and other information on which the notice or findings is based, and

(2) the period within which interested persons may present their comments on the notice or findings (including the need therefor) orally or in writing, which period shall be at least sixty days but may not exceed ninety days unless the time is extended by the Secretary by a notice published in the Federal Register stating good cause therefor."

industry rather than to the Secretary as is envisioned by § 360j(e), which directs the Secretary to decide whether restricted distribution is required because "there cannot otherwise be reasonable assurance of [the device's] safety and effectiveness." *Id.* at 1181.

The FDA advances here basically the same arguments that were rejected by the Second Circuit: that the legislative history indicates Congress was aware of the prescription device regulation and intended to sanction that regulation while expanding the FDA's authority to reach devices that did not easily fit into the prescription device category. The Second Circuit took account of these arguments but concluded that references in the legislative history to the prescription device regulation were in no way inconsistent with—nor did they indicate a congressional intention to bypass—the "careful procedures and well-defined regulations" otherwise projected in 21 U.S.C. §§ 360j(d) and (e). *Id.,* 589 F.2d at 1181. We find the Second Circuit's reasoning to be persuasive, and agree that the agency has not exercised its regulatory power as required, leaving it presently without inspection authority relative to Portex's endotracheal tubes.

While we conclude the FDA may not inspect Portex's complaint files and records, there remains the question whether the remainder of the warrant may be executed. Were we to address this question, we would have to resolve the difficult issues presented by Portex's other two arguments—whether the warrant is supported by probable cause and whether an adversary hearing must precede the issuance of an administrative search warrant. We do not pass on these at this time because we understand Portex to object only to the records portion of the warrant, principally the complaint files. The history of this litigation indicates that it has been the FDA's attempt to inspect Portex's records which led to the present controversy. Portex's refusal to allow that inspection prompted the FDA to seek and obtain the warrant. Both in its brief before the district court and before this court, Portex's arguments have been directed to preserving its records and complaint files from inspection. Before embarking upon a resolution of the other two points we would want to be assured, as currently we are not, that a controversy exists between the parties.

*Affirmed.*